IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-22-123-GLJ |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Claimant Michelle Leeann Hill requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether the correct legal standards were applied. *See Hawkins v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Instead, the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairments *are not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show that there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, U.S. 474, 488 (1951). S*ee also Casias*, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 42 years old at the time of the administrative hearing. (Tr. 164, 261). She completed her GED as well as one semester of college. (Tr. 51). She has past work experience as a property manager, office manager, and claims adjuster. (Tr. 17). Claimant alleges an inability to work since November 1, 2018, due to limitations imposed by bipolar disorder, depression, anxiety, and attention deficit hyperactivity disorder. (Tr. 264).

### Procedural History

On January 29, 2019, Claimant protectively applied for supplemental security income under Title XVI (42 U.S.C. § 1381, *et seq*.) of the Social Security Act. On November 30, 2020, ALJ Kevin Batik conducted an administrative hearing and entered an unfavorable decision on February 12, 2021. (Tr. 18, 46). The Appeals Council denied review making the ALJ's opinion the Commissioner's final decision for the purpose of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five. (Tr. 17-18). At step two he determined that Claimant had the severe impairments of scoliosis, depression, anxiety, attention deficit hyperactivity disorder, and post-traumatic stress disorder. (Tr. 12). He found at step three that Claimant did not meet any Listing. (Tr. 13). At step four he found that Claimant had the residual functional capacity ("RFC) to perform light work except that she can only understand, remember, and carry out simple tasks, cannot perform fast-paced or

production-rate work, and can have only occasional interaction with coworkers, supervisors, or the public. (Tr. 14). The ALJ concluded that, although Claimant could not return to her previous work, there was work she could perform in the national economy such as cleaner/housekeeper, price marker, and routing clerk. (Tr. 16-18).

## Review

Claimant contends that the ALJ's reasons for rejecting the medical opinion of Consultative Examiner, Dr. Betty Eitel, are unsupported by law. Specifically, Claimant argues that the ALJ was required to consider the Claimant's explanations of why she did not have additional supportive evidence, erred in analyzing the consistency of Dr. Eitel's opinion with the record, and should have given more weight to the opinion of Psychiatric Mental Health Nurse Practitioner ("PMHNP") Stacy Crownover. For the reasons discussed below, the Court finds Claimant's arguments unpersuasive.

The Medical evidence relevant to this appeal reveals that on October 30, 2017, Claimant saw her Primary Care Physician, Dr. Mike White, who found her well-groomed, cooperative, calm, pleasant, oriented, with normal memory, above-average intelligence, intact insight, judgment, and thought processes, as well as unremarkable thought content, but that she had a labile mood and was tearful at times. (Tr. 488-89). Dr. White made similar unremarkable mental status findings through October 31, 2019 (Tr. 519, 522-23, 529). On April 20, 2020, Claimant was seen by Qualified Mental Health Professional ("QMHP") Omelicth Weidman who noted unremarkable mood, affect, thought process, orientation, behavior, and functioning. (Tr. 571). Providers largely made similar unremarkable findings at each of sixteen visits from April 28, 2020, through September

4

29, 2020 (Tr. 574-75, 608-16, 633-34, 641-60); however, on May 11, 2020, an exam noted that Claimant was hyperverbal, with a flight of ideas, appeared sad and anxious, with poor attention span, concentration, and racing thoughts. (Tr. 596-98). On November 23, 2020, Claimant saw Dr. Quinton Tieu who noted that Claimant appeared jittery or fidgety, did not make good eye contact, but had normal speech, memory, and decision-making. (Tr. 665-67).

On September 9, 2017, Sheila Bailey, Ph. D. conducted a Mental Status Examination in which she found Claimant easily established rapport and had unremarkable memory, attention, concentration, and executive function. (Tr. 464-66). On August 14, 2019, Psychologist Betty Eitel, Ph. D., completed a consultative examination and noted that Claimant built rapport very easily and was pleasant and cooperative, with dysthymic mood, restricted affect, and tense facial expression, logical thoughts and associations, and no delusions or hallucinations, but that she had slightly impaired ability to encode and retain material, slightly impaired concentration, and abstract reasoning abilities below the normal range. (Tr. 491-96). Despite these mental status findings, Dr. Eitel then opined that Claimant "can only understand, carry out, and remember instructions, irregularly, depending on severity of symptoms, for several steps," and "cannot sustain concentration and persist in work-related activity at a reasonable place," nor "maintain effective social interaction on a consistent independent basis with supervisors, co-workers, and the public, or deal with normal pressures in a competitive work setting." *Id.* Shortly thereafter, on August 31, 2020, PMHNP Stacy Crownover completed a Mental Impairment Questionnaire and checked boxes indicating that Claimant was "seriously limited" or

"unable to meet competitive standards" in most mental abilities and aptitudes and indicated that Claimant experienced marked limitations in every area of mental functioning assessed. (Tr. 535-36).

State examiners determined initially and upon reconsideration as to mental impairments that Claimant is able to understand, remember, and carry out detailed but not complex instructions, make basic decisions, concentrate for extended periods, interact with others, and respond to changes. (Tr. 109, 125).

In his written opinion at step four, the ALJ summarized Claimant's hearing testimony and much of the evidence in the record. (Tr. 14-16). He then found that Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with treatment records. (Tr. 15). As relevant here, the ALJ found Dr. Eitel's opinion unpersuasive as it was "not well explained and conclusory in nature" and "not consistent with the limited and routine nature of [C]laimant's mental health treatment." (Tr. 16).  However, he nevertheless considered her opinion in limiting Claimant's work pace and social interaction .

Claimant contends that the ALJ's reasons for rejecting the medical opinion of Consultative Examiner, Dr. Eitel, are unsupported by law. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c.  Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors.  *See* 20 C.F.R.

§§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds here that the ALJ's treatment of Dr. Eitel's opinion here was sufficient, if sparse in analysis. The ALJ was unpersuaded by Dr. Eitel's opinion which consists, in large part, of a retelling of Claimant's symptoms and history, followed by mostly unremarkable mental status exam results. (Tr. 491-96). Despite finding that Claimant's ability to encode and retain material was only slightly impaired, Dr. Eitel concluded that Claimant is only able to understand, carry out, and remember instructions irregularly, depending on the severity of her symptoms. (Tr. 494-96). Similarly, after

7

finding Claimant's concentration was only slightly impaired, Dr. Eitel concluded that Claimant is unable to sustain concentration or persist in work-related activity at a reasonable pace. *Id.* Although the ALJ's explanation perhaps could have been more detailed, the Court agrees with the ALJ's finding that Dr. Eitel's opinion is "not well explained and conclusory" and that her conclusions are not properly supported by her own exam findings or the remainder of the record. *Id.*

Further, the ALJ properly found Dr. Eitel's opinion inconsistent with "the limited and routine nature of the claimant's mental health treatment," and "treatment records which do not document substantial interpersonal conflicts, or significant memory deficits." (Tr. 16). Claimant's assertion that the ALJ erred in his consideration of the consistency factor by failing to consider Claimant's explanations for why her treatment was limited and routine is therefore unavailing.

Furthermore, Claimant appears to conflate the standards for analyzing a medical opinion with the standards for analyzing a claimant's subjective symptoms. Soc. Sec. R. 16-3p states that:

> [The ALJ] will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them. We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.

2016 WL 1119029 at *9 (Mar. 16, 2016). However, an ALJ analyzes a medical opinion under 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3), not SSR 16-3p. While Claimant cites

to *Arterberry v. Berryhill*, 743 F. App'x 227, 230 (10th Cir. 2018),[2] in support, the Court disagrees with Claimant's characterization of the case. Nothing in *Arterberry*, suggests that reversal is appropriate should an ALJ fail to consider a claimant's explanations when evaluating the consistency of a medical opinion. *Id.* at 229-30. Instead, the court in *Arterberry* affirmed the ALJ's decision to discount the opinion in question where, as here, it was inconsistent with a record that showed care limited to medication management. *Id.* at 229.

Claimant nevertheless contends that the ALJ erred in finding that Dr. Eitel's opinion is inconsistent with "treatment records which do not document substantial interpersonal conflicts, or significant memory deficits." (Tr. 16). Claimant first argues that this finding

---

[2] Claimant's quotation of *Arterberry* is inaccurate. She claims it reads:

> It was improper for the ALJ to discount a medical opinion due to a claimant's failure to seek specialized mental health treatment when the ALJ fails to consider alternative explanations for the claimant's lack of specialized mental health treatment. The Court notes that as a result, the claimant's failure to seek specialized mental health treatment is 'not particularly enlightening.'

*Arterberry v. Berryhill*, 743 F. App'x 227, 230 (10th Cir. 2018). Yet, other than the phrase "not particularly enlightening," this quotation is not found in *Arterberry*. Instead, the relevant portion reads:

> Substantial evidence supports the ALJ's observation that Dr. Brown's defined limitations were not consistent with the medical evidence, including his own mental examinations. And the ALJ accurately noted that Dr. Brown's treatment plan was limited to medication management. . . . The ALJ also stated that Arterberry had not previously sought specialized mental health treatment, and Dr. Brown reported "no formally diagnosed mental illness." But there is no indication that the ALJ considered alternative explanations for Arterberry's lack of a specialized prior treatment history. Consequently, Arterberry's failure to seek specialized mental-health treatment is not particularly enlightening.

*Id.*

"is essentially saying that there is not enough mental health treatment to substantiate Dr. Eitel's opinion, but then in the same breath, the ALJ is then saying that there *is* enough mental treatment to prove that Dr. Eitel's opinion is inconsistent with this mental health evidence." (emphasis original). The Court disagrees with this characterization. The ALJ's meaning is plain; Dr. Eitel's conclusions are inconsistent with the evidence of record, including her own exam findings. Claimant cites to no authority, and the Court can find none, that supports Claimant's assertion of impropriety. *See Best-Willie v. Colvin,* 514 F. App'x 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Claimant next argues that there is some evidence, namely the opinion of PMHNP Crownover, that is consistent with Dr. Eitel's opinion. However, the ALJ found her opinion likewise unpersuasive because the "extreme limitations" she proposed were not well explained or consistent with Claimant's treatment history, nor supported by objective mental status findings. (Tr. 16). Claimant does not challenge the ALJ's assessment of Ms. Crownover's opinion, and the inquiry upon review is not whether substantial evidence supports Claimant's interpretation of the record but whether it supports the ALJ's. *See Burns v. Chater*, 105 F.3d 669 at *2 (10th Cir. 1997) ("While we acknowledge that there is some evidence in the record favoring claimant's interpretation of this case, we reiterate that our task on appeal is not to reweigh the evidence . . . but to review the record to ensure that substantial evidence supports the decision of the ALJ."). The Court has performed an extensive review of the entire record and finds that the ALJ's discussion of Dr. Eitel's

opinion is supported by substantial evidence and adequately articulates consideration of the persuasiveness, supportability, and consistency factors. Accordingly, the Court finds that the ALJ's opinion is supported by substantial evidence, and the correct legal standards were applied.

## Conclusion

The Court finds that the decision of the Commissioner is supported by substantial evidence and the correct legal standards were not applied. Accordingly, the decision of the Commissioner is AFFIRMED.

**DATED** this 24th day of August, 2023.

_____
**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**